FILED '08 MAY 20 14:52 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SHERRYL D. LILLARD,<br><br>    Plaintiff<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | Civil No. 07-839-TC<br><br>FINDINGS AND<br>RECOMMENDATION |

COFFIN, Magistrate Judge:

Plaintiff Sherryl Lillard ("Lillard") seeks judicial review of the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the following reasons, the Commissioner's decision should be AFFIRMED and the case should be dismissed.

## BACKGROUND

Born in 1962, Lillard completed one year of college. Tr. 77, 190.[1] Between 1988 and 1998 Lillard worked as an athletic club manager, bookkeeper, accounts receivable clerk, and pharmacist's aid. Tr. 185.

Lillard applied for DIB on July 8, 2002, alleging disability since January 1, 1999, due to carpal tunnel syndrome, "CFS" (chronic fatigue syndrome), fibromyalgia, "alpha delta sleep disorder," chronic sinus infections, depression, and anxiety. Tr. 77, 184. Lillard's application was denied initially and upon reconsideration. Tr. 35-39, 42-44. Hearings were held before an Administrative Law Judge ("ALJ") on October 20, 2003, and December 17, 2003, and the ALJ found Lillard not disabled on February 10, 2004. Tr. 20-32, 606-09, 610-42. Lillard appealed that decision to this court, and on November 22, 2005, this court remanded the matter for further proceedings following stipulation by both parties. Tr. 677-78.

The ALJ held a third hearing on July 6, 2006, and issued a decision on December 28, 2005, again finding that Lillard not disabled. Tr. 661-76, 1032-92. The Appeals Council did not assume jurisdiction, making the ALJ's December 2005 decision the Commissioner's final decision. 20 C.F.R. § 404.984. Lillard seeks review of this finding.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 404.1520, *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Lillard challenges the ALJ's evaluation of the evidence and

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer October 23, 2007 (Docket #8).

her conclusion at step five.

At step one, the ALJ determines if the claimant is performing substantial gainful activity ("SGA"). If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12 month duration requirement. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 404.1520(e); Social Security Ruling ("SSR") 96-8p (available at 1996 WL 374184). The ALJ uses this information to determine if the claimant can perform past relevant work at step four. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work she is not disabled. *Id.*

At step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.1999); 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f).

3 - FINDINGS AND RECOMMENDATION

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches step five, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566, 404.1520(g).

## THE ALJ'S FINDINGS

The ALJ found Lillard's fibromyalgia with hypothyroidism and obesity, right carpal tunnel syndrome, and adjustment disorder "severe" at step two in the sequential proceedings. Tr. 382. The ALJ found that these impairments did not meet or equal a listing at step three and evaluated Lillard's RFC:

> Exertionally, the claimant can lift and carry 10 pounds frequently and 20 pounds occasionally. She can stand and walk for up to 6-hours (cumulatively, not continuously) in an 8-hour workday and sit for 6-hours of 8, with normal breaks. She requires a sit or stand option so she can change between positions. Her push/pull exertional capacities in her upper and lower extremities, are limited to the weight levels she can lift-and-carry, as set forth above.
>
> The claimant's postural non-exertional limitations are that she can occasionally climb stairs and equivalent ramps, but is precluded from climbing ropes, ladders and scaffolding. She is limited to no more than occasional overhead reaching with her right dominant arm. She is able to do simple and some detailed tasks.

Tr. 674. The ALJ found that Lillard could not perform her past relevant work at step four, but found that she could perform work in the national economy at step five. Tr. 674-75. The ALJ therefore found Lillard not disabled. Tr. 675-76.

4 - FINDINGS AND RECOMMENDATION

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Lillard contends the ALJ improperly assessed the severity of her impairments, and improperly assessed medical evidence, her testimony and that of a lay witness. Lillard subsequently contends the ALJ inaccurately assessed her RFC and her ability to perform work existing in the national economy.

I.   **The ALJ's Step Two Findings**

At step two in the sequential proceedings, the ALJ determines if the claimant has a "severe" impairment. 20 C.F.R. § 404.1520(a)(4)(ii). This finding considers "medical severity" only. *Id.* An impairment is "severe" if it "significantly limits your ability to do basic work activities." 20 C.F.R. § 404.1520(c), *see also* 20 C.F.R. § 404.1521. Such an impairment must

5 - FINDINGS AND RECOMMENDATION

last, or be expected to last, twelve months. 20 C.F.R. § 404.1509.

Lillard now contends the ALJ found her allegations not credible at step two. Pl.'s Opening Br. 18. The ALJ does not consider a claimant's statements about her impairments until she construes an RFC assessment prior to steps four and five of the sequential analysis. 20 C.F.R. § 404.1545(a)(3). Credibility is irrelevant at step two in the sequential proceedings.

The ALJ found Lillard's fibromyalgia with hypothyroidism and obesity, right carpal tunnel syndrome, and adjustment disorder "severe" at step two. Tr. 664. Regarding the ALJ's other alleged omissions, the ALJ's analysis at steps four and five must consider all of a claimant's impairments, both severe and non-severe. 20 C.F.R. § 404.1545(a)(2). Because the ALJ proceeded beyond step three, any omission regarding a step two severity finding is inconsequential. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). The ALJ's step two findings are sustained.

## II.   Medical Source Statements

Lillard contends that the ALJ's inappropriately evaluated the opinions of Drs. Crawford and Jones. Lillard also contends that the ALJ erroneously rejected a diagnosis submitted by a nurse practitioner and restrictions assessed by reviewing physicians.

### A.   Standard

The ALJ must generally accord greater weight to the opinion of a treating physician than that of an examining physician, and in turn give greater weight to an examining physician's opinion than that of a reviewing physician. *Lester v. Chater*, 81 F.3d 921, 830 (9th Cir. 1995). The ALJ must give specific, legitimate reasons supported by substantial evidence for rejecting a

6 - FINDINGS AND RECOMMENDATION

controverted opinion and "clear and convincing reasons" for rejecting an uncontroverted opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). This evaluation may set out a detailed and thorough summary of the facts and conflicting clinical evidence. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The opinion of a physician, however, is not necessarily conclusive to the ultimate issue of disability, which is reserved for the Commissioner. 20 C.F.R. § 404.1527(c)(1).

**B.  Dr. Crawford**

Lillard contends the ALJ erroneously reviewed the opinion of her previous treating physician, Dr. Crawford, who treated Lillard prior to August 2001. Pl.'s Opening Br. 26. Lillard's submission cites Dr. Crawford's clinical notes. Her first citation purports to indicate an April 15, 1999, chart note regarding her sinusitis. Pl.'s Opening Br. 4. The indicated citation is signed by Dr. Michael Tso, rather than Dr. Crawford. Tr. 480. The successive entry in the record shows Dr. Crawford's August, 6, 1998, chart note assessing arthralgias and pregnancy. Tr. 481. Lillard does not establish that the ALJ erroneously considered Dr. Crawford's opinion regarding her sinusitis.

Lillard subsequently states that "on 6/19/01, plaintiff saw Dr. Crawford who noted her diagnosis of fibromyalgia." Pl.'s Opening Br. 4. Lillard provides no citation for this assertion. *Id.* The record shows that Dr. Crawford met with Lillard on June 19, 2001. Tr. 278. On this date Dr. Crawford noted Lillard's thyroid test results and wrote, "she has been seen at a fibromyalgia clinic, sounds like by a naturopath who checked her for candida which was negative but did find some other things he suggested might need treatment." *Id.* Dr. Crawford's

7 - FINDINGS AND RECOMMENDATION

diagnostic assessment at this visit did not include fibromylagia. *Id.*

The ALJ discussed Dr. Crawford's opinion, first noting Dr. Crawford's November 2003 opinion (tr. 571-73) suggesting that Lillard was unable to sustain full time employment between January 1, 1999, and August 20, 2001. Tr. 673. The ALJ found this opinion "entitled to little weight because it is based on the claimant's subjective reports of symptoms including fatigue, myalgias, and depression and she is not fully credible." *Id.* The ALJ need not credit a physician's opinion predicated upon reports of a claimant found not credible. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). This reasoning should be sustained.

The ALJ subsequently noted that Dr. Crawford's "opinion is not consistent with [his] treatment records which indicate that he never diagnosed fibromyalgia." Tr. 673. As noted above, Lillard incorrectly asserts that Dr. Crawford's treatment notes show that he made a clinical fibromyalgia diagnosis. The ALJ's finding is therefore based upon the record.

The ALJ finally noted that Dr. Crawford submitted his opinion that Lillard was unable to work two years after last treating Lillard. *Id.* The ALJ also found "no corroborating evidence" in the record and noted that Dr. Crawford "reported no objective findings to support his opinion." *Id.* The ALJ may reject physician opinions unsupported by appropriate clinical notes or findings. *Bayliss*, 427 F.3d at 1216.

In summary, the ALJ's analysis of Dr. Crawford's opinion is based upon the record and should be affirmed.

### C. Dr. Steven Jones

Lillard contends that the ALJ erroneously rejected Dr. Jones' opinion. Pl.'s Opening Br.

8 - FINDINGS AND RECOMMENDATION

28-29. The ALJ cited and accepted Dr. Jones' treatment notes (contained in exhibits 7F, 16F, and 18F) repeatedly throughout her decision. Tr. 664-68, 672.

Dr. Jones treated Lillard between August 2004 and July 2006, when the record closed. Dr. Jones assessed fibromyalgia, trochanteric bursitis, and sinusitis. Dr. Jones also supervised Lillard's pain medication and performed some primary care. On August 16, 2006, Dr. Jones completed a questionnaire submitted by Lillard's counsel. Tr. 1027.

Here Dr. Jones stated that Lillard could occasionally lift and carry than ten to fifteen pounds, stand for three hours cumulatively and forty-five minutes without interruption, and sit up to six hours cumulatively and no more than three hours without interruption. Tr. 1027. Dr. Jones based these limitations upon Lillard's fibromyalgia trigger point tenderness, her "history" and Lillard's "complaint of not being able to lift 7 to 15" pounds. *Id.*

Dr. Jones also restricted Lillard from any climbing, balancing, or crawling, and suggested only occasional stooping, crouching, or kneeling. Tr. 1028. Dr. Jones based this restriction upon Lillard's exhibited pain and stiffness in the examination room. *Id.* Dr. Jones subsequently affirmed that Lillard's ability to reach, handle, and push or pull are "affected" by her impairment, based upon "her history." *Id.* Finally, Dr. Jones restricted Lillard from heights and moving machinery, stating that he would find this restriction for all fibromyalgia patients. *Id.*

The ALJ addressed this questionnaire: "Dr. Jones in August 2006 vaguely opined the claimant is capable of greater capacity at sedentary-to-light exertion; however he did not specify her exact physical or mental limits." Tr. 673. This analysis does not reflect Dr. Jones' submission.

9 - FINDINGS AND RECOMMENDATION

However, the ALJ's RFC assessment limited Lillard to "light work with postural and manipulative limitations." Tr. 673. Light work restricts a claimant from lifting or carrying "no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. 404.1568(b). This assessment is consistent with Dr. Jones' submission that Lilliard should not lift more than "10-15" pounds "occasionally." Tr. 1027. Dr. Jones did not specify that Lillard may never lift more than fifteen pounds.

The ALJ's remaining RFC reflects Dr. Jones' limitations regarding balancing, stooping, crouching, kneeling, and crawling. Tr. 1028. While Dr. Jones indicated that Lillard should "never" climb, he did not specify that this excluded climbing ordinary ramps and stairs. The ALJ restricted Lillard from climbing ropes, ladders, and scaffoldings. Tr. 674. This court finds such restriction sufficiently compatible with Dr. Jones' limitation.

In summary, Lillard fails to show that the ALJ's RFC erroneously omitted Dr. Jones' suggested restrictions.

### D.  Nurse Practitioner Reisinger

Lillard asserts that the ALJ failed to give appropriate consideration to a fibromyalgia diagnosis rendered by Nurse Practitioner Karen Reisinger. Pl.'s Opening Br. 27. Nurse practitioners are evaluated as "other" medical sources. 20 C.F.R. § 404.1513(d). Such sources may "show the severity of your impairment and how it affects your ability to work." *Id.* However, "other medical sources cannot establish the existence of a medically determinable impairment." SSR 06-3p at *2 (available at 2006 WL 2329939).

Lillard suggests that, because Reisinger and Dr. Crawford worked in the same clinic,

10 - FINDINGS AND RECOMMENDATION

Reisinger's opinion should be given greater weight. Pl.'s Opening Br. 23. A nurse practitioner working under a physician's direct supervision may be construed as an agent of that physician. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996). However, the record does not show that Dr. Crawford directly supervised Reisinger's treatment and Dr. Crawford did not sign Reisinger's treatment notes. As discussed above, Dr. Crawford noted Lillard's reports that she received a fibromyalgia diagnosis, but did not affirm this diagnosis. The ALJ's rejection of Reisinger's diagnostic assessment, or establishment of Lillard's fibromyalgia impairment, was therefore appropriate and should be affirmed.

E.  **Reviewing Physicians**

Lillard finally contends that the ALJ failed to address limitations assessed by Disability Determination Services ("DDS")[2] reviewing physicians. Pl.'s Opening Br. 32. A DDS physician first suggested "occasional" limitations in handling, grasping, twisting, turning, and holding with the right hand. Tr. 424. This statement was dated September 2, 2002. *Id.* On December 2, 2002, a second DDS reviewing physician completed another RFC assessment, finding Lillard "occasionally" limited in reaching actions with her right upper extremity. Tr. 450. This physician did not limit Lillard's ability to handle, finger, or feel. *Id.*

The ALJ's RFC assessed "manipulative limitations." Tr. 673. The ALJ further limited Lillard to "no more than occasional overhead reaching with her right dominant arm." Tr. 674. These findings sufficiently reflect the DDS analysis.

---

[2] DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 404.1503.

11 - FINDINGS AND RECOMMENDATION

In summary, Lillard fails to show reversible error in the ALJ's analysis of the medical record.

### III. Duty to Develop the Record

Lillard contends that, if the ALJ declined to accept Dr. Jones' August 2006 disability opinion, she had a duty to develop the record regarding that opinion. Pl.'s Opening Br. 29. The ALJ's duty to develop the record is triggered when evidence is insufficient or when ambiguities arise. *Bayliss*, 427 F.3d at 1217. As noted, the ALJ's analysis failed to consider all of Dr. Jones' stated restrictions, but the ALJ's RFC did include Dr. Jones' supported restrictions. Lillard presently fails to establish a relevant "ambiguity" in Dr. Jones' opinion.

Lillard also admits that "most of Dr. Crawford's records are not part of the record." *Id.* at 26. A claimant bears the burden of providing evidence in establishing disability. *Yuckert*, 482 U.S. at 146 n.5. This is because "it is not unreasonable to require the claimant, who is in a better position to provide information about his own medical records, to do so." *Id.* The ALJ cannot be faulted for failing to review records the claimant did not provide.

The record is sufficiently developed and this argument should not be sustained.

### IV. Credibility

Lillard contends the ALJ erroneously rejected her testimony. The ALJ found Lillard's "allegations only partially credible." Tr. 671. The ALJ based this finding upon Lillard's work history, reported volunteer work, activities of daily living, inconsistent allegations of memory problems, and medical record. Tr. 671-72.

///

12 - FINDINGS AND RECOMMENDATION

A.  **Standard**

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged" the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* Once a claimant shows an underlying impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

B.  **Discussion**

a.  **Work History**

The ALJ noted that Lillard "had not performed substantial gainful activity since 1995, approximately when she had her second child." Tr. 671. The ALJ may consider a claimant's work history in his credibility decision. *Smolen*, 80 F.3d at 1284. Lillard contends that her

13 - FINDINGS AND RECOMMENDATION

earnings history was viewed out of context because she chose not to work between 1995 and her January 1, 1999, alleged onset date. Pl.'s Opening Br. 21. However, the ALJ's conclusion is based upon the record. This court must affirm "inferences reasonably drawn" from the record, even if other plausible interpretations arise. *Batson*, 359 F.3d at 1193, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). For this reason the ALJ's reference to Lillard's work history should be affirmed.

### b.    Activities of Daily Living

The ALJ's credibility discussion cited Lillard's reported daily activities, including caring for two children, serving on a volunteer city council, and volunteer work conducted at her church. Tr. 671-72. The ALJ also noted Lillard's reports that she uses a computer, reads, watches movies, plays with her children, and works on her house and yard. Tr. 672. While a claimant need not "vegetate in dark room," *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987), the ALJ may cite a claimant's daily activities in conjunction with other factors. *Smolen*, 80 F.3d at 1284. Furthermore, "although the evidence of [a claimant's] daily activities may also admit of an interpretation more favorable to [claimant], the ALJ's interpretation was rational," the reviewing court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Burch*, 400 F.3d at 680-81 (citing *Magallanes*, 881 F.2d at 750). For these reasons, the ALJ's reference to Lillard's daily activities should be affirmed.

### c.    Medical Record

The ALJ also discussed Lillard's medical record. The ALJ may cite the medical record in

14 - FINDINGS AND RECOMMENDATION

concert with other factors in assessing a claimant's credibility. *Smolen*, 80 F.3d at 1284, *see also Robbins*, 466 F.3d at 883.

Lillard contends that the ALJ erroneously found that medical records did not reflect her fatigue. Pl.'s Opening Br. 22-25. The ALJ discussed the medical record and Lillard's fatigue:

> The claimant has reported she experiences fatigue and often needs to lie down from 2.00 p.m. to 6.00 p.m.; however there is no evidence that lying down is a medical necessity. Medical records reflect little evidence that she endured fatigue until September 2000 when she reported fatigue and unexplained weight gain which were attributed to severe hypothyroidism. However, there is no indication that she complained of debilitating fatigue to any of her treating and examining physicians at Kaiser Permanente on or before June 30, 2002, her date last insured.

Tr. 672.

Lillard first alleges that the ALJ's erroneously rejected Nurse Reisinger's fibromyalgia diagnosis and Dr. Crawford's report of that diagnosis. Pl.'s Opening Br. 23-24. This argument is dismissed for the reasons stated above. Lillard subsequently alleges that the record shows that Lillard complained of fatigue "which has been a feature of her history since 1999." Pl.'s Opening Br. 24, citing tr. 283-86, 574, 580, 590, 765-67, 1023-24, 1026. Lillard's indicated citations show Reisinger's 2000 and 2001 discussion of her reported fatigue (tr. 283-86), a telephone message stating that Lillard reported fatigue (tr. 574), a social worker's notation that reduced fatigue was a treatment goal in family therapy (tr. 590), and a Kaiser entry showing fatigue as a "reason for visit" but without associated clinical discussion (tr. 765-66). Lillard's final citations pertain to a discussion of her fatigue in June 2006 (tr. 1023-24), well after her June, 30 2002, date last insured, and an unrelated cervical spine MRI (tr. 1026). These citations fail to show that the ALJ improperly reached her conclusion that Lillard did not complain of debilitating fatigue

15 - FINDINGS AND RECOMMENDATION

prior to June 30, 2002. Therefore, the ALJ's finding should be affirmed.

### d.  Lillard's Motivation in Testing

The ALJ finally noted examining psychologist Dr. Kolilis' report that she "demonstrated less than full effort on testing and a lack of motivation to return to work." Tr. 672. Dr. Kolilis stated that Lillard's "performance on the memory tasks [in examination] was deemed by this examiner to lack optimal effort." Tr. 293. The ALJ may consider a claimant's conduct in testing. *Thomas v. Barnhart*, 278 F.3d 947, 953 (9th Cir. 2002). This finding is based upon the record and should be sustained.

### C.  Conclusion

This court finds the ALJ's credibility analysis sufficient. Considered together, the ALJ's findings provide adequate reasons for questioning Lillard's credibility. The ALJ's credibility decision is based upon substantial evidence and should be affirmed.

## V.  Lay Testimony

Lillard contends that the ALJ erroneously evaluated lay testimony. Pl.'s Opening Br. 25. Lillard does not identify what lay testimony the ALJ erroneously evaluated.

### A.  Evaluating Lay Witness Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d), 404.1545(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment, but she may reject lay testimony

inconsistent with the medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Lewis*, 236 F.3d at 512.

### B. Discussion

The ALJ considered the testimony of Lillard's husband, Shawn Lillard, and her pastor, David Hall:

> [T]he statements of Mr. Lillard and Mr. Hall . . . generally credible to the extent they report their observations of the behaviors the claimant demonstrates. However, because these individuals do not have medical expertise, their opinions are of limited evidentiary value regarding how the claimant's mental and physical impairments impact her overall abilities to perform basic work activities at various exertional levels.

Tr. 672. The ALJ specifically gave "little weight" to Shawn Lillard's opinion that Lillard would be incapable of performing work activity on a regular and sustained basis. Tr. 672.

The ALJ did not reject the lay witnesses' reported observations. The ALJ rejected the lay witness' opinions that Lillard could not work. Such a finding is reserved for the Commissioner. 20 C.F.R. § 404.1527(c)(1). Lillard fails to show that the ALJ erroneously evaluated observations reported by lay witnesses. For this reason, the ALJ's reasoning should be sustained.

### VI. Step Five Findings

Finally, Lillard contends that the ALJ's questions to the vocational expert ("VE") at step five of the sequential proceeding was not based upon an appropriate RFC assessment.

The ALJ is not required to include unsupported limitations in his hypothetical questions to a VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2001). For the reasons established above, Lillard fails to show substantive error in the ALJ's evaluation of the medical

17 - FINDINGS AND RECOMMENDATION

evidence or Lillard's credibility in construing Lillard's RFC assessment. The ALJ appropriately relied upon this RFC and the VE's testimony in his step five finding. *Id.* Lillard therefore fails to show error in the ALJ's questions to the VE.

## RECOMMENDATION

This court finds that the Commissioner's decision that Lillard did not suffer from disability and is not entitled to benefits under Title II of the Social Security Act is based upon correct legal standards. This court recommends the Commissioner's decision be AFFIRMED.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due June 2, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections ten days after service of a copy of the objections. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

IT IS SO ORDERED.

DATED this 20th day of May, 2008.

Thomas M. Coffin
United States Magistrate Judge

18 - FINDINGS AND RECOMMENDATION